**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JENNIFER GODDARD<br>2721 Stonegate Circle<br>Camp Hill, PA 17011<br><br>Plaintiff,<br><br>v.<br><br>HONOR TECHNOLOGY, INC<br>13323 California Street<br>Omaha, NE 68154<br><br>Defendant. | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Jennifer Goddard (hereinafter referred to as "Plaintiff" unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff initiates the instant action to redress violations by Honor Technology, Inc. (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000d *et. seq*.)/the Pregnancy Discrimination Act ("PDA"), the Pregnant Workers Fairness Act ("PWFA" - Pub. L. No. 117-328, 136 Stat. 4459 (2022)), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").
.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's future state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a citizen of the Middle District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Honor Technology, Inc. (hereinafter individually "Defendant Honor") is a senior care network and home care platform, with a location at the above-captioned address.

9. Plaintiff was placed by staffing agency Brilliant Staffing, LLC (hereinafter "Brilliant") to work within Defendant, and although Plaintiff was hired and paid through Brilliant, Plaintiff was treated in functional respects like an employee of Defendant while working within Defendant. Defendant's management had the ability to manage, discipline, give directives to, and make decisions regarding Plaintiff's employment. Plaintiff was permitted to address her work concerns with Defendant's management and was obligated to follow the policies of Defendant. Thus, for the foregoing reasons, Defendant may be treated as a single and/or joint employer for purposes of the instant action.

10. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. On or about October 23, 2024, Plaintiff, and another employee, Mary Jastine Mejia Mendez (hereinafter "Mendez") were hired by staffing agency Brilliant to work within Defendant as "Temporary Employees to Hire."

13. At all times relevant herein, Plaintiff was employed with Defendant as a Revenue Operations Specialist, working remotely from her home in Camp Hill, Pennsylvania, and reporting to Defendant's Revenue Operations Manager, Kevin Jeung (hereinafter "Jeung").

14. While working for Defendant, Plaintiff's contract was continuously extended due to her strong work ethic and hard work, until Plaintiff advised Defendant of her pregnancy and pregnancy-related complications, after which, Plaintiff was abruptly terminated on or about September 17, 2025 (discussed further *infra*).

15. In or about May of 2025, Plaintiff informed Jeung and Brilliant that she was pregnant.

16. Brilliant's management informed Plaintiff that they did not have an FMLA or maternity leave policy (allegedly due to their small size) and advised Plaintiff to reach out to Defendant about any potential maternity leave and/or policies they might have regarding the same.

17. Plaintiff informed both Jeung and Brilliant that she planned to take maternity leave beginning in or about November of 2025 (a reasonable accommodation under the PWFA).

18. In response to Plaintiff's notification that she planned to take maternity leave in or about November of 2025, Plaintiff was only vaguely informed that Brilliant was speaking with Defendant and that they planned to have a meeting to discuss Plaintiff's accommodation requests surrounding her pregnancy. However, Plaintiff was never advised of any outcome of the meeting before she was abruptly terminated.

19. Rather, on or about September 12, 2025, Plaintiff informed Jeung that she had developed pregnancy-related medical conditions/complications, including but not limited to,

cholestasis of pregnancy (a liver condition), which put both Plaintiff and her unborn baby at risk of serious and/or fatal complications.

20. As a result of Plaintiff's aforesaid pregnancy-related medical condition, she suffered from pain, extreme fatigue, and itching; which (at times) interfered with her ability to perform some daily life functions, such as standing without pain, sleeping, and working (among other daily life functions).

21. Despite Plaintiff's aforesaid pregnancy-related medical conditions, she was able to perform her job duties well; however she (at times) required some reasonable medical accommodations.

22. For example, as a result of Plaintiff's aforementioned pregnancy-related medical conditions/complications, she advised Jeung that her doctor wanted to monitor her more closely with more frequent weekly doctor visits for testing and evaluation, and that Plaintiff's C-section had been moved up to November 20, 2025, as a result.

23. Plaintiff further informed Jeung that she had upcoming appointments on Monday, September 15, 2025, and an appointment for an ultrasound on Friday, September 19, 2025, for which Plaintiff said she would make up the time in her schedule (reasonable accommodations under the PWFA and ADA which would not have interfered with her ability to perform her job duties).

24. Instead of properly accommodating Plaintiff's pregnancy-related medical conditions, however, Plaintiff was abruptly terminated by Jeung on or about September 17, 2025, for alleged "budget restraints." Specifically, Jeung advised Plaintiff that Defendant was over budget on both Plaintiff's and Mendez's contracts.

25. Plaintiff directly asked Jeung if she was being terminated due to her performance or her pregnancy, but Jeung assured her that it was simply budgetary reasons.

26. However, following her termination, Plaintiff discovered that Mendez's contract had not been terminated, and in fact, she continued to perform work for Defendant.

27. Most tellingly, during the Equal Employment Opportunity Commission ("EEOC") process for Plaintiff's complaint, Defendant provided contradictory factual statements regarding the circumstances surrounding Plaintiff's termination in their Position Statement responses to Plaintiff's EEOC complaint, with Defendant providing an entirely new/shifting reason for Plaintiff's termination – that she purportedly had performance issues.

28. Not only are Defendant's shifting/conflicting reasons for Plaintiff's termination clear evidence of pretext,[2] Plaintiff avers that she was a higher performer than Mendez. In fact, throughout her employment with Defendant, Plaintiff collected more money from customers than Mendez, frequently identified Mendez's mistakes to Jeung and corrected them (including whole reports), and had far less open tickets than Mendez at any given time.

29. Defendant's purported conflicting/shifting reasons for Plaintiff's termination, however, are completely false and pretextual because: (1) despite allegedly being over budget for both contracts, Mendez (a non-pregnant employee) was retained over Plaintiff and continues to work for Defendant; and (2) Plaintiff was terminated ***mere days*** after informing Defendant's management of her pregnancy-related medical conditions and requesting reasonable pregnancy related medical accommodations and/or maternity leave.

---

[2] *See, e.g.*, *Zelinski v. Pennsylvania State Police,* 108 Fed. Appx. 700, 707 (3d Cir.2004) (emphasis added); *see also Bourara v. N.Y. Hotel Trades Council & Hotel Ass'n of N.Y. City, Inc., Emple. Ben. Funds*, No. 20-3092, 2021 U.S. App. LEXIS 31269, at *4 (2d Cir. Oct. 19, 2021) (citing *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)) (same); *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 55 (3d Cir.1990)(emphasis added) (holding plaintiff can demonstrate pretext by showing that a "defendant's proffered reason is 'merely fabricated justification for discriminatory conduct ···"either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is ***unworthy of credence***'").

30. Plaintiff believes and therefore avers that she was subjected to discrimination, and retaliation as a result of (1) her pregnancy; (2) her pregnancy-related medical conditions; (3) her requested accommodations for her pregnancy and pregnancy-related medical conditions (*i.e.*, time off for doctor's visits and maternity leave); and (4) Defendant's failure to properly accommodate her pregnancy-related medical conditions.

31. Plaintiff finally believes and therefore avers that her pregnancy, pregnancy-related medical conditions, and requested accommodations for the same (set forth *supra*) were motivating and/or determinative factors in the termination of her employment by Defendant.

**COUNT I**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII") / the Pregnancy Discrimination Act ("PDA")**
**([1] Pregnancy Discrimination; [2] Retaliation; and [3] Wrongful Termination)**

32. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33. Plaintiff disclosed to Defendant's management that she was pregnant in or about May of 2025.

34. Plaintiff was terminated on or about September 17, 2025, for clearly pretextual reasons.

35. Plaintiff believes and therefore avers that she was subjected to discrimination and retaliation as the result of her pregnancy and discussions regarding her pregnancy, care, and maternity leave.

36. Plaintiff believes and therefore also avers that her pregnancy and discussions regarding her pregnancy, care, and maternity leave were motivating and/or determinative factors in Defendant's decision to terminate her employment.

37. Defendant's actions of discriminating against and terminating Plaintiff constitute violations of Title VII/PDA.

**COUNT II**
**Violations of the Pregnant Workers Fairness Act ("PWFA")**
**([1] Interference; [2] Retaliation; [3] Discrimination; and [4] Failure to Accommodate)**

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff is qualified under the PWFA for protection because she was pregnant during her employment with Defendant and had requested the reasonable accommodation of time off from work due to her pregnancy, pregnancy-related medical conditions, and maternity leave.

40. Defendant terminated Plaintiff's employment, to avoid accommodating Plaintiff's requested time off from work for her pregnancy, pregnancy-related medical conditions, and maternity leave.

41. Plaintiff was terminated on or about September 17, 2025, in very close proximity to her requests for pregnancy-related medical accommodations and maternity leave, for completely pretextual reasons.

42. Plaintiff believes and therefore avers that her rights under the PWFA were interfered with, and she was retaliated against for requesting reasonable pregnancy-related accommodations when Defendant unlawfully terminated her employment.

43. Defendant's actions as aforesaid constitute violations of the PWFA.

**COUNT III**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

44. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full

45. Plaintiff suffers from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

46. Plaintiff kept Defendant's management informed of her disabilities and need for medical accommodations throughout her employment with Defendant.

47. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

48. Plaintiff requested reasonable accommodations from Defendant, including but not limited to time off work to attend diagnostic testing, ultra-sounds, and monitoring of Plaintiff's serious pregnancy-related medical conditions.

49. Defendant failed to properly accommodate Plaintiff by terminating her on or about September 17, 2025, for completely pretextual reasons, just days after she requested the reasonable accommodation of time off from work to attend diagnostic testing, ultra-sounds, and monitoring, and/or to prevent her from taking the same.

50. Plaintiff believes and therefore avers that she was subjected to discrimination and retaliation because of: (1) her actual/perceived/record of health conditions; (2) her requests for reasonable accommodations; and (3) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

51. Plaintiff also believes and therefore avers that her health conditions were motivating and/or determinative factors in the termination of her employment by Defendant.

52. These actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law; and

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
akarpf@karpf-law.com
(215) 639-0801

Dated: October 6, 2026